2003 OK CIV APP 16

**Robin Lee MOORE, Petitioner,**

v.

**PESP/TSI GROUP, Legion Insurance Co., and The Workers' Compensation Court, Respondents.**

No. 97,606.

Court of Civil Appeals of Oklahoma, Division No. 3.

Nov. 15, 2002.

Certiorari Denied Feb. 3, 2003.

---

Randall P. Robinson, Bryan and Robinson, Oklahoma City, OK, for Petitioner.

Jay L. Jones, McClure Law Office, Oklahoma City, OK, for Respondents PESP/TSI Group and Legion Insurance Co.

## OPINION

ADAMS, Judge:

¶ 1 Claimant Robin Moore asks us to vacate an order of a three-judge panel of the Workers' Compensation Court affirming a trial judge's denial of compensation based on a finding that Claimant's injury did not arise out of and in the course of his employment with PESP/TSI Group (Employer, collectively with its insurance carrier, Legion Insurance Co.). We conclude the order is supported by competent evidence and sustain it.

¶ 2 Claimant, an iron worker for Employer, filed a Form 3 for multiple injuries he received on Thursday, April 26, 2000, in a car accident that occurred two hours after he and a co-worker, Robert Weese, left work in Texas driving to Oklahoma City where they planned to pick up their per diem checks from Employer's office mailbox before going home. Employer filed an answer, denying Claimant's injuries "occurred in the course of and scope of his employment," and moved for a trial on that issue. At the hearing, counsel for Employer stipulated that Claimant was an employee covered by the Workers' Compensation Act and had sustained an injury on April 26, 2000, but denied that incident "arose out of and in the course and scope of his employment."

¶ 3 Claimant testified that the different construction sites where he worked for Employer for the past year were all located in Oklahoma City or Oklahoma County, except for the post office in Wichita Falls, Texas (the Texas project). For the latter job only, Claimant was paid his regular hourly wage, $16.00 per hour, and an additional $4.05 per hour, which the parties variously referred to as a "per diem bonus" or "per diem check."

¶ 4 Although Employer introduced evidence that the "per diem" money was paid in order to allow workers to stay in the area so that they would be available to report to work, Claimant testified he and Weese decided to commute daily to the Texas project because they believed they would spend less of the "per diem" money by doing so. On the day of the accident, they left Oklahoma City at 4 a.m. and drove to the Texas project *via* the H.E. Bailey Turnpike, their usual drive

both ways. From Employer's on-site office, they called Employer's office personnel in the Oklahoma City office "ahead of time," requesting them to put their per diem checks in the company mailbox located out in front of the office.[1]

¶ 5 After an 8½ hour workday, Claimant and Weese left the Texas project around 4:30 p.m. Before leaving, Weese placed an opened 50 pound box of welding rods into Claimant's car. They drove back on the turnpike until they ran out of money for the tollbooths to make it all the way to Oklahoma City. The accident occurred on a highway near Chickasha, Oklahoma when Claimant fell asleep at the wheel, causing his car to go left of center and to collide with other cars, injuring both him and Weese.

¶ 6 When Claimant's questioning was completed, his counsel sought admission of his hospital records and other documents, on some of which the trial judge reserved ruling until making the final order.[2] Employer then presented the testimony of Bob Young, one of Employer's job foremen at the Texas project, and offered into evidence additional medical reports, which were admitted over Claimant's probative value objection.

¶ 7 In his order, the trial judge found that Claimant did not sustain an accidental personal injury arising out of and in the course of his employment and denied his claim for compensation. In addition thereto, the trial judge specifically found[3] that: (1) Claimant's accident "did not arise out of his employment" with Employer; (2) Claimant's transportation of equipment was without the consent of Employer, who had made other arrangements for the protection of the equipment from the elements, and that he was neither expected or required to place any company equipment in his personal vehicle for safe-keeping; (3) Claimant's decision to travel back and forth each day to his residence was a personal one and that Employer was offering local accommodations and per diem in lieu of such a long trip; and that (4) Under the circumstances of this case, Claimant was not engaged in a special task for Employer, nor was he engaged in a dual purpose mission. Claimant filed an *en banc* appeal from the trial court's denial of compensation, which the three-judge panel affirmed. This review proceeding followed.

¶ 8 In this review proceeding Claimant argues the trial court's decision was not supported by the evidence, and also argues the trial judge should have consolidated this case with the trial in Weese's claim. In addition, he argues we should abandon the "any competent evidence" standard of review established in *Parks v. Norman Municipal Hospital*, 1984 OK 53, 684 P.2d 548. Because it affects our review of the other arguments, we address this argument first.

¶ 9 If we understand Claimant's argument correctly, he contends the 1986 amendments to the Workers' Compensation Act, 85 O.S. § 1 *et seq.*, necessitate a reexamination of the "any competent evidence" standard of review established in *Parks*. His argument is couched as a public policy argument. *Parks* was based on the Court's interpretation of 85 O.S.1981 § 3.6, and Claimant has cited us to no 1986 amendment to that section which would alter the conclusion reached

1. Employer introduced evidence that the checks normally were delivered by Federal Express to the job site on payday. Technically, according to Employer, if Claimant and Weese had successfully completed their journey, they would have received their checks a day early.

2. Prior to submitting his case to the trial judge, Claimant's counsel offered into evidence a copy of the trial transcript from Weese's workers' compensation case. Employer's counsel objected to the trial transcript because of stipulations made therein to which Employer was not willing to stipulate in Claimant's case. Several options were discussed by the parties and the trial judge reserved ruling on the transcript's admissibility upon the parties' agreement that, if determined to be admissible, only the testimony of the lay witnesses would be considered. Employer made the same objection to Claimant's subsequent offer of both parties' briefs in Weese's appeal, to which the trial judge responded, "[w]ell, as far as the law, at least with regard to the travel back and forth, it may be of aid to the Court, so I will permit that."

3. As part of its review of the evidence, the trial court took "judicial notice of briefs and trial transcript (other than the stipulations which [Claimant] would not agree to in this claim) filed in the case of ROBERT WEESE, Case NO.2000–09578X, the co-worker who was a passenger in [Claimant's] vehicle."

in *Parks*. Therefore, we are not free to reexamine the rule established in *Parks* and will follow that standard of review in this case. Under that standard of review, our task is to review the evidence in the record, without weighing the evidence, to determine whether the record contains any competent evidence which reasonably supports the order. If the record contains such evidence and the order is otherwise free of legal error, we must sustain the order.

¶ 10 Whether an employee's injury "arises out of" or "occurs in the course of" employment presents a non-jurisdictional issue of fact which is to be determined by the trial judge and must be affirmed by the reviewing court if supported by competent evidence. *Lanman v. Oklahoma County Sheriff's Office*, 1998 OK 37, 958 P.2d 795. The burden of proof is on the claimant to show the disability for which compensation is sought was caused by an accident arising out of and in the course of employment. *Barnhill v. Smithway Motor Express*, 1999 OK 82, 991 P.2d 527.

¶ 11 To be compensable, an injury must both occur (1) in the course of and (2) arise out of the worker's employment; these are distinct elements and are not to be understood as synonymous. *American Management Systems, Inc. v. Burns*, 1995 OK 58, 903 P.2d 288. The latter phrase contemplates the causal connection between the injury and the risks incident to employment, whereas the former phrase relates to the time, place or circumstances under which the injury is sustained. *Thomas v. Keith Hensel Optical Labs*, 1982 OK 120, 653 P.2d 201.

¶ 12 As a general rule, injuries sustained by a worker while going to and coming from the workplace *do not* arise out of and in the course of employment within the meaning of the Workers' Compensation Act. *Stroud Municipal Hospital v. Mooney*, 1996 OK 127, 933 P.2d 872. As noted in *Barnhill*, this rule grows out of the fact that going to and coming from work is a product of the employee's own choice concerning where he or she desires to live, a choice normally of no interest to the employer, and that ordinarily a person's employment does not begin until he or she reaches the place of employment.

¶ 13 Oklahoma Courts have recognized several exceptions to the going and coming rule for off premises injuries. The exceptions raised by Claimant's arguments include: (1) where the employee is charged with a special task or duty, or is engaged in a dual purpose trip, and (2) where the employer furnishes the transportation, pays for the transportation, or the work creates the necessity for travel. *See Mooney, supra; Christian v. Nicor Drilling Company*, 1982 OK 76, 653 P.2d 185; *F.W.A. Drilling Company v. Ulery*, 1973 OK 82, 512 P.2d 192. The evidence in this record supports the trial court's conclusion that none of those exceptions apply.

¶ 14 In this connection, Claimant contends that the out-of-state assignment *itself* constitutes a "special mission," because it created the necessity of out-of-state travel and represented a departure in terms of the employment which he normally performed for Employer. He further contends that the payment of per diem allowance "was in recognition of the unusual, out-of-the ordinary, or 'special mission' which [he] was called upon to perform out of state." In support of these arguments, Claimant cites *Christian v. Nicor Drilling Co.*, 1982 OK 76, 653 P.2d 185, *Austin Drilling Company v. Rice*, 1980 OK CIV APP 28, 616 P.2d 446, and *Oklahoma Natural Gas Company v. Williams*, 1981 OK 147, 639 P.2d 1222.

¶ 15 The applicability of the special task exception is ordinarily a question of fact, however, where the facts necessary to establish the special task exception are undisputed, a question of law is presented. *Lucas v. Triad Drilling Company*, 1998 OK 98, 969 P.2d 363. According to *Mooney*, the special task exception is applicable when the accidental injury is sustained while the employee is going to perform, or leaving after performing, a special task outside of his or her regular working hours *and* at the employer's request.

¶ 16 Claimant has not cited any Oklahoma authority holding that commuting to a different city or state to do the *same work* the worker routinely performs constitutes a spe-

cial task or mission, and the three cases he cites as authority do not support any of his argument. In *Williams,* the claimant was injured in a car accident after attending the employer's Christmas party and while driving to a babysitter's house. After finding record support for implied compulsion and employer benefit for employee's attendance at that social/recreational event, the *Williams* Court considered the employer's deviation argument and held that the special task exception to the going and coming rule governed the case, explaining "[the claimant] undertook to attend the Christmas party in furtherance of his master's business, and as an incident of his employment. The travel bears all the indicia of *special duty mission that lies outside the work routine—*an off-premises mission with the attendant extra risk." (Emphasis added.) *Williams,* 1981 OK 147, ¶ 23, 639 P.2d at 1227.

¶ 17 For the special task or mission exception to apply, one must be performing extra work *outside of regular working hours* that is different from or unrelated to the work required in the usual and ordinary course of employment. *See Harris v. La-Quinta,* 1997 OK 50, 937 P.2d 89; *Richardson v. Pitts,* 1965 OK 174, 408 P.2d 327; *Dawson v. Oklahoma City Casket Company,* 1958 OK 29, 322 P.2d 642. When addressing the existence of an employer-employee relationship, the Court in *Fluor Engineers & Contractors v. Kessler,* 1977 OK 37, 561 P.2d 72, discussed the going and coming rule and some of its exceptions and concluded none applied in that case, stating *"[n]either can driving from [a worker's] home to another job in a different city be held to be a 'special task.'"* (Emphasis added.) We can find no evidence in this record establishing that Claimant was performing any different work at the Texas project than he did at any other construction sites, and his decision to drive to the Texas project does not make that job a special task.

¶ 18 Further, in *Austin Drilling* and *Christian,* the Courts did not apply the special task exception, but found the claimants' injuries compensable under another exception to the going and coming rule—where an employer pays travel time and travel expenses or furnishes transportation, respectively.[4] It is undisputed in this case that Employer did not provide transportation to and from the Texas project, did not pay for travel time, mileage, upkeep or maintenance on Claimant's personal vehicle, and intended that the per diem check be used for lodging and meals while working more than 100 miles from its office.

¶ 19 Claimant also argues that the trial court erred because at the time of the accident, he and Weese were directly in route to Employer's premises where, by prior arrangements made with Employer, they were to retrieve their per diem checks which had been left there as a special accommodation. After citing *Novak v. McAlister,* 1956 OK 205, 301 P.2d 234, for the special task exception, Claimant relies on two Oklahoma workers' compensation cases, *Solo Cup v. Pate,* 1974 OK 131, 528 P.2d 300, and *St. Anthony Hospital v. James,* 1994 OK CIV APP 176, 889 P.2d 1279, as support for the compensability of injuries sustained by employees while collecting pay.

¶ 20 However, such reliance is misplaced. In *Novak,* the Court considered an exception to the going and coming rule clearly not applicable to this case, i.e., where the only way of access to the employer's premises presents a danger to which the employee is peculiarly subjected and thus constitutes an added risk incidental to the employment. The Court concluded that the claimant's after-lunch fall on loose gravel in the public street in front of her employer's business was not an added risk incidental to her employment because she could have reached the premises without walking through the gravel. As in *Novak,* there is no evidence in this record of a employer-created, work-related

4. In *Christian,* the claimant, who had missed the transportation provided by his employer, was injured while driving his car to work pursuant to the foreman's order. The *Austin* claimant, a member of an oil well drilling crew, was driving his own car to and from work when he was injured in an automobile accident on a public road. Unlike this case, the *Austin* claimant was paid $11.00 per day as "travel pay," which the evidence established was "for his transportation expenses and time consumed in traveling to and from work."

risk. It is undisputed that Claimant and his co-worker decided to commute for the Texas project for personal economic reasons, instead of using their per diem checks as the Employer intended.

¶ 21 Further, in *Pate* and *James,* the injuries occurred *on the employers' premises,* and the courts' analyses in both cases clearly limits application of this exception to the going and coming rule to "on-premises injuries." In this case, Claimant's injuries undisputedly occurred off of Employer's premises, and there is no evidence that Claimant's trip to Employer's premises was required by Employer, as occurred in *Pate,* or that employees were in the habit of receiving pay in this manner, as considered in *James.* Moreover, Claimant testified that Weese requested Employer to place his and Claimant's per diem checks in the company mailbox in Oklahoma City for pick up after work *and* that Employer normally delivered these checks along with their weekly paycheck on Friday *via* Fed–Ex or mail.

¶ 22 Finally, in this connection, Claimant argues he was on a dual purpose trip, because (1) his out-of-state job assignment created the necessity for travel and due to its greater traveling distance, his risk of injury exceeded the ordinary hazards to which the general public is exposed; and (2) his decision to safeguard the welding rods, *even in the absence of any specific instruction* to do so, conferred a "sufficiently direct benefit" to Employer. To support his argument, Claimant primarily relies on Justice Cardozo's "dual purpose test" from *Marks Dependents v. Gray,* 251 N.Y. 90, 167 N.E. 181 (1929), *American Management Systems, Inc. v. Burns,* 1995 OK 58, 903 P.2d 288, and *Haco Drilling Co. v. Burchette,* 1961 OK 145, 364 P.2d 674.

¶ 23 The *Marks* test, as quoted and applied by the Oklahoma Supreme Court in *Cochran v. Maassen Tool & Supply Co.,* 1951 OK 10, ¶ 15, 226 P.2d 953, 956, provides:

> We do not say that service to the employer must be the sole cause of the journey, but at least it must be a concurrent cause. To establish liability, the inference must be

permissible that the trip would have been made though the private errand had been cancelled.... The test in brief is this: If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of this own.... If, however, the work had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure of the private purpose, though the business errand was undone, the travel is then personal, and personal the risk.

¶ 24 As established previously, the travel between Oklahoma City and the Texas Project is not considered a business errand. The evidence supports the trial court's conclusion that the trip was a personal errand for Claimant and Weese, motivated by their desire to spend less of the "per diem" money. The record also supports the conclusion that the trip would have been performed whether there was any need to obtain additional welding rods, pick up the "per diem" checks, or secure the welding rods. Under the test cited by Claimant, the trial court correctly treated the trip as a personal errand with the attendant personal risk.

¶ 25 *Haco Drilling Co.* offers no more support for Claimant. It involved an employer's liability for an employee's negligent acts, wherein incidental benefit to an employer may be considered to impose liability on the employer under *respondeat superior,* and has no application in a workers' compensation context. *Burns* is even worse for the Claimant as the record is devoid of any evidence that Claimant and Weese were subjected to any risk beyond that faced by the ordinary traveling public.

¶ 26 Claimant's remaining argument is that the trial court should have consolidated the trial of his case with that of Weese. Other than the risk of inconsistent decisions in two cases that is inherent in our system which allows each party their day in court, he identifies no prejudice from the decision not to try the cases together.[5] Moreover, he did

---

5. In Weese's case, which was tried before this case to a different trial judge and was based on

not raise this error in his *en banc* appeal and has waived any such error. *Red Rock Mental Health v. Roberts,* 1997 OK 133, 940 P.2d 486.

¶ 27 Based upon this record, we cannot conclude that the trial court's order is contrary to law or unsupported by any competent evidence. The order is sustained.

SUSTAINED.

HANSEN, P.J., dissents, and MITCHELL, J., concurs.

stipulations to a great extent and included no testimony from Employer's foreman, the trial court awarded benefits. In No. 96,716, decided today as well, we vacate that decision, concluding it was not supported by any competent evidence.